T.C. Memo. 2005-69

UNITED STATES TAX COURT

BILL J. MALONE, JR. AND SARAH J. MALONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9350-03.                    Filed April 4, 2005.

Bill J. Malone, Jr., pro se.

<u>Daniel N. Price</u>, for respondent.

MEMORANDUM OPINION

CARLUZZO, <u>Special Trial Judge</u>:  Respondent determined
deficiencies of $2,153 and $7,491 and section 6662(a) accuracy-
related penalties of $431 and $1,498, with respect to
petitioners' 1999 and 2000 Federal income taxes, respectively.[1]

---

[1]  Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the taxable years in issue.
Rule references are to the Tax Court Rules of Practice and
Procedure.

For each year in issue, the issues for decision are:
(1) Whether petitioners are entitled to deductions claimed on a Schedule C, Profit or Loss From Business; and (2) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioners resided in Austin, Texas.  References to petitioner are to Bill Malone.

Petitioners were married in 1983.  They have eight children: H, R, N, B, Dn, M, Db, and J[2] (collectively, the Malone children).

Petitioner is and was at all relevant times a practicing attorney, with offices in Austin, Texas.  During the years in issue, he devoted an average of 35 hours per week to his law practice and, in addition, was employed as a law professor at Oak Brook College of Law.  Sarah Malone has a degree in education.  In the stipulation of facts she is described as a "homemaker".  During the years in issue she "home schooled" the Malone children.

Petitioners and their children are musically inclined and, as amply demonstrated by the record, are quite talented in that

---

[2] Full names of petitioners' minor children are omitted in the interest of privacy.

regard.  Petitioner, who plays guitar, banjo, trumpet, piano, and other instruments, gave guitar lessons while attending college. In 1999 he was diagnosed with a medical condition that has since restricted his ability to take full advantage of his musical talents.  Prior to the years in issue, Mrs. Malone taught basic music theory to elementary school students.

Music instruction is a material component of the Malone children's home school curriculum.  With the exception of the youngest child, all of the Malone children take musical instrument lessons.  Each child that does take lessons plays a variety of instruments, including the piano and the violin.

H and R, the eldest of the Malone children, started taking music lessons at an early age.  H plays the piano, violin, viola, and harp.  R plays the piano, violin, and flute.  H and R are skilled musicians and both have performed in public events.  In 1996, at around age 12, H began to teach R to play the piano and soon offered her services as a piano teacher to others.  Shortly thereafter, R began to teach violin.

Malone Music, an unincorporated activity, was started in or around 1996, about the time that H and R began providing music lessons.  Malone Music engages in several activities.  It sponsors Melody Makers, a "music camp" conducted in the summer months during school recess.  It also promotes an ensemble whose musicians consist of members of the Malone family.  The ensemble

entertained, usually on a no fee basis, at local hospitals, senior citizen facilities, etc. Malone Music's primary activity, however, involves providing music lessons to students drawn usually from the ranks of the Malone children's friends, neighbors, or classmates. H and R are Malone Music's only music instructors, and together they provide all of the musical instrument lessons. On a more limited basis, Malone Music also offers instructions in music theory taught by B. H primarily teaches piano and harp; R primarily teaches violin. H and R also conduct the Melody Makers summer music camp. According to petitioner, a "fair description of the teaching services" typically offered by Malone Music includes piano lessons offered by H and/or violin lessons provided by R. Substantially all, if not all, of the music lessons provided by H and R through Malone Music take place in designated rooms in petitioners' residence.

In 1998, H became seriously ill and was unable to devote significant time to Malone Music until mid-1999. According to petitioner, H's medical problems restricted Malone Music's potential "to take off faster and further".

Susan Groves (Ms. Groves) is a piano teacher. As of the date of trial, she had been giving lessons for almost 20 years. She taught piano to several of the Malone children over the years, but, prior to the trial in this case, she had never heard of the name "Malone Music". Ms. Groves spoke to petitioners and

H "about H's business from time to time," but she did not provide advice to H or other members of the Malone family as to business or financial matters related to Malone Music. Nor did petitioners or any member of the Malone family involved with Malone Music seek professional advice or assistance regarding how the activity should be operated.

Students secure the services of Malone Music in accordance with written materials that explain, among other things, the nature of the services offered, lesson schedules, fee schedules, payment plans and arrangements, as well as what H and R expect from their students. A checking account in the names of H, R, and petitioner was established for Malone Music (Malone Music checking account). Fees generated by the services offered by Malone Music are generally due to be paid on a monthly basis.[3] Students are required to "make checks payable to [the] instructor personally." Cash payments received from the students are paid directly to H and R. Typically, payments received by H and R are deposited in the Malone Music checking account.

Initially, the expenses of Malone Music were paid by petitioner usually with checks drawn on his personal checking account. After the Malone Music checking account was opened, the expenses for Malone Music were paid from that account. If there

---

[3] H and R also provide free music lessons to their siblings, and they barter for their services with those students who cannot otherwise afford to pay their fees in cash.

were insufficient funds in the Malone Music checking account, petitioner would provide the needed funds, subject to reimbursement from the Malone Music checking account if and when funds became available. Petitioner viewed these advances as small, short-term loans to Malone Music.

Malone Music does not advertise its services in any established publication. From time to time, H and/or R create and distribute leaflets and brochures for specific events or classes offered by Malone Music in which they are identified as the music leaders or "professors". In an attempt to attract students, R, with the assistance of N, created a Web site for Malone Music. That Web site lists H and R as the only "contact individuals" for Malone Music, and further identifies them as the activity's only instructors.

Petitioner assisted H and R with Malone Music for approximately two-plus hours each week during the years in issue. During those years, Mrs. Malone devoted approximately 8 hours per week to helping out with Malone Music. Neither petitioner nor Mrs. Malone provided any music lessons to anyone through Malone Music. Petitioner describes petitioners' involvement in Malone Music as "primarily administrative". Generally, petitioner assisted with paying any necessary expenses and purchasing musical instruments. At the outset of Malone Music, Mrs. Malone would "from time to time" monitor the music instruction, but her

involvement, "in the big picture", was generally "fairly rare". Petitioners did not keep any records with respect to the time they devoted to Malone Music during the years in issue.

Progress reports and payment records for the students of Malone Music were maintained by H and R. Certain aspects of Malone Music's financial activities were recorded using a commercial computer software program (the program) that was also used for petitioners' personal finances. With respect to Malone Music, the program was used to record information rather than to generate financial statements or other analytical reports.

Petitioners pay for music lessons and purchase musical instruments for the Malone children. The quantity and the quality of the musical instruments purchased by petitioner depend on the financial performance of petitioner's law practice. When petitioner's law practice is profitable, petitioner looks for "good quality instruments" to purchase. As of the date of trial, the musical instruments purchased by petitioner include: Two Steinway pianos, an upright piano, eight violins, a viola, a harp, a trumpet, three guitars, and two banjos. The musical instruments are used by all of the Malone children in their music lessons and practice, as well as by H and R in their capacities as Malone Music instructors.

On a Schedule C, Profit or Loss From Business, included with each of petitioners' joint Federal income returns for 1997 through 2001, petitioners reported income and expenses from Malone Music as follows:

| Year | Gross Income Reported | Total Expenses Claimed | Total Losses Claimed |
|------|----------------------|------------------------|----------------------|
| 1997 | $550 | $27,898 | $27,348 |
| 1998 | 1,777 | 28,074 | 26,297 |
| 1999 | 1,917 | 8,553 | 6,636 |
| 2000 | 2,559 | 23,123 | 20,564 |
| 2001 | 5,758 | 26,060 | 20,302 |

The gross income from Malone Music reported on the Schedules C for the years in issue is primarily attributable to services provided by H and R.[4]  The deductions claimed on the Schedules C for the years in issue consist almost entirely of amounts paid for music lessons for the Malone children and the cost of musical instruments.[5]

In the notice of deficiency for each year in issue, respondent disallowed all of the deductions claimed on the Schedule C and imposed a section 6662(a) accuracy-related penalty.  Other adjustments made in the notice of deficiency are computational and need not be addressed.

---

[4]  A small amount of Malone Music's income for each year in issue is attributable to services provided by B.

[5]  For example, the only deduction claimed on the 1999 Schedule C ($8,553) is for "music instruction" expenses of the Malone children.  In 1998, petitioner spent $11,560 for two violins.  The cost of those violins is claimed as a deduction on the Schedule C included with petitioners' 2000 return.

Discussion

In general, there is "allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Sec. 162(a).[6] It is axiomatic that expenses "allowed as a deduction" under section 162 are expenses paid or incurred in carrying on the trade or business of the taxpayer who claims entitlement to those deductions.

In this case, petitioners claim that Malone Music is petitioner's trade or business, and their Federal income tax return for each year in issue (as well as other years not before the Court) reflects this claim as income and deductions attributable to Malone Music are included on a Schedule C included with each of those returns. In addition to other grounds advanced for disallowing the deductions claimed on those Schedules C, respondent takes the position that Malone Music, if a trade or business, is not petitioner's trade or business, but the trade or business of one or more of the Malone children.[7] Resolving the dispute between the parties on this point requires

---

[6] Petitioners rely exclusively upon sec. 162 in support of the deductions here under consideration.

[7] In his answer, respondent alleges that "Malone Music is not an activity engaged in by petitioners", but rather by H and R. In his opening statement respondent's counsel noted that Malone Music "wasn't even petitioners", but "conducted by" one or more of the Malone children.

that we place ownership of an activity or business conducted through an unincorporated association.  This is no easy task as none of the many indicia of ownership are determinative.  Nevertheless, for the following reasons, we agree with respondent.

Although we make no finding on the point, for convenience we proceed as though during each year in issue Malone Music constituted a trade or business within the meaning of section 162 and turn our attention to which individual or individuals were "carrying on" that trade or business during those years.  In so doing we note that the services offered by Malone Music are best described as labor-intensive and examine:  (1) Ownership of the assets used in the business; (2) what individuals provided the necessary labor; and (3) how Malone Music was held out to, and/or perceived by the general public.

Beginning with the last criterion, the Assumed Name Records Certificate of Ownership for Unincorporated Business or Profession, filed March 12, 1998, with the Clerk of Travis County, Texas, describes Malone Music as a "proprietorship" owned by petitioner.  To that extent, petitioner publicly holds himself out as the owner of the business, subject to whatever benefits and burdens that might flow as a result.  Nevertheless, petitioner is nowhere named in any of the written promotional materials published by Malone Music.  Rather those materials

repeatedly refer to H and R in various capacities. The absence of any reference to petitioner in documents generated by Malone Music is in contrast to a reference to petitioner as the "director" of "Malone Academy", a name apparently used to describe the Malone children's home schooling program. Furthermore, to the extent that the testimony of one witness is representative of public impressions, the music teacher who taught some of the Malone children referred to Malone Music as "H's business". The promotional materials published by Malone Music and the impression of the Malone children's music teacher support a finding that the business was not carried on by petitioner, but rather by one or more of the Malone children.

We next examine the status of the ownership of assets used in the business and note that the ownership of some of those assets is not entirely clear. The business premises, that is, certain rooms in the family residence designated for such use, are apparently owned by petitioner or petitioners. Some of the musical instruments used in the business, no doubt, are also owned by petitioner or petitioners, but it is not clear whether some of those instruments, although purchased by petitioner or petitioners, were gifted to one or another of the Malone children. A business checking account was opened at some point, but control over that account says little about the ownership of the business as petitioner, H, and R are all signatories to the

account.  To the extent that the ownership of assets used in connection with the carrying on of a trade or business is, in general, indicative of ownership, the record in this case, simply put, provides no useful guidance on the point.

Lastly, we consider which individuals provided labor in connection with the business and the extent of that labor.  In this regard we note that Malone Music had no employees during the years in issue.  As we view the matter, although not determinative in a general sense, in a labor-intensive business with no employees, there is strong suggestion that the individuals performing the labor own the business.  In this case the record overwhelmingly demonstrates that the business was carried on through the labor of H, R, and other of the Malone children.  This is true not only with respect to the services and programs offered by Malone Music, but with respect to internal activities as well, such as planning and record keeping.  Petitioner describes his labor contribution to the business as "administrative".  We view it more in the nature of parental.  The fact that one or more of the Malone children, rather than petitioner or petitioners, supplied the necessary labor to carry on the business during the years in issue, strongly supports a finding that the business belonged to one or more of the children, not to petitioner.

Taking into account the three factors listed above, we find that Malone Music, if a trade or business within the meaning of section 162(a), was not, during the years in issue, petitioner's trade or business, but the trade or business of one or more of the Malone children.[8]  It follows that the items of income[9] and deductions attributable to Malone Music are not properly includable on petitioners' return for either year in issue and we so hold.[10]

For each year in issue, respondent imposed a section 6662(a) accuracy-related penalty upon the ground that the underpayment of tax required to be shown on petitioners' return for each year is due to negligence or disregard of rules or regulations.  Sec.

---

[8]  Obviously, we have no jurisdiction in this proceeding with respect to any of the Malone children for any year and make no findings regarding the Federal income tax liabilities of any of them.

[9]  The issues presented and positions of the parties in this case focus our attention on disallowed deductions.  Nevertheless, with respect to the income reported on the Schedules C, we note that our conclusion is entirely consistent with Lucas v. Earl, 281 U.S. 111 (1930) (income is taxed to the person who earned it).  Our conclusion is further consistent with sec. 73, which provides, in general, that amounts received in respect of services rendered by a child are includable in the child's gross income and not in the gross income of the child's parents, even though such amounts are not received by the child, sec. 73(a), and expenditures paid by the parent or the child attributable to amounts which are includable in the gross income of the child are generally treated as paid or incurred by the child, sec. 73(b).

[10]  Our holding in this regard makes it unnecessary to address respondent's other grounds for the disallowance of the deductions claimed on the Schedules C.

6662(a) and (b)(1).  Negligence is defined to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c).  It is further defined as the failure to do what a reasonable person with ordinary prudence would do under the same or similar circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Disregard is defined to include any careless, reckless, or intentional disregard.  Sec. 6662(c).  An accuracy-related penalty will not be imposed with respect to any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  Whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Generally, an important factor is the extent of the taxpayer's effort to properly assess the tax liability.  Circumstances that may indicate reasonable cause and good faith include and an honest misunderstanding of fact or law that is reasonable in light of the taxpayer's experience, knowledge, and education.  Id.

Petitioners' return for each year in issue was prepared by petitioner, a practicing attorney.  Nothing in the record suggests that petitioner sought professional guidance or advice in connection with the preparation of petitioners' returns.  Petitioner's profession is relevant in deciding whether petitioners are liable for a penalty under section 6662(a),

Pelton & Gunther v. Commissioner, T.C. Memo. 1999-339; Estate of Holland v. Commissioner, T.C. Memo. 1997-302, but as best can be determined from the record, petitioner's professional experiences relate to matters other than Federal income taxation.

We noted from the outset that placing ownership of a business conducted through an unincorporated association was not easy, and we expect that reasonable minds could differ as to the foregoing analysis and conclusion on the point.  We are not persuaded that petitioners did not have sufficient reasonable cause to avoid the imposition of the penalty for each year, and we so find.  Accordingly, petitioners are not liable for a section 6662(a) penalty for either year in issue.

To reflect the foregoing,

Decision will be entered under Rule 155.